20179.   JORDAN *et al.* v. THE STATE OF GEORGIA.

DECIDED SEPTEMBER 8, 1930.

*C. G. Battle,* for plaintiffs in error.

*John A. Boykin, solicitor-general, John S. McClelland, solicitor,* contra.

BELL, J. This was a proceeding in the criminal court of Atlanta to forfeit the criminal bond of William Craig, which was signed by D. M. Jordan and N. A. Garner as securities. The securities appeared and interposed two defenses: (1) A surrender of the principal in satisfaction of the bond; and (2) a discharge of the securities, due to the fact that, after the execution of the bond for the appearance of the principal for one offense, he was arrested under a State warrant for another offense (which was also a bailable offense) and was then delivered to the Federal authorities for some cause, from whose custody he escaped, and has not been apprehended. The recognizance was executed on August 18, 1928, and required the appearance of the principal at a term of court "in session next, from day to day, and from term to term." The second arrest occurred on September 24, and it was on October 1 that the principal was delivered to and escaped from the custody of the Federal officers, he having been imprisoned in the county jail in the meantime. The rule nisi on the bond forfeiture was issued on October 23,—all in the year 1928. The case was tried before the judge without a jury, and resulted in a judgment or rule

absolute against the securities. A certiorari in the superior court was dismissed, and the securities then brought the case to this court.

■ The inquiry in this court is whether the evidence demanded a finding in favor of either of the defenses pleaded. First, as to the question of surrender: The evidence showed that a deputy sheriff notified Garner, one of the securities, that William Craig was wanted for some additional offense alleged to have been committed in Fulton county, and that Garner told this officer that he would have Craig "at his place" at a certain time. The officer returned and found Craig at Garner's place at the time appointed, and there arrested him. The deputy was accompanied by a police officer, and in their presence Garner spoke to Craig, as follows: "Well, I am going to wash my hands of you. You are getting loaded;" after which he turned to the officer and said, "You have him; now take him;" or "You've got him; I am through with him." This was the entire conversation between Garner and these officers, who then took Craig away and placed him in the jail of Fulton county. Under this evidence the trial judge did not err in finding against the claim of a surrender. The law is that a bail may surrender his principal in vacation to the sheriff, or in open court, in discharge of his liability under the bond. Penal Code (1910), § 960. The sureties here contended that they had surrendered their principal, not to the sheriff, but to a deputy sheriff, and there is no evidence that this officer knew of the existence of the bond upon which Jordan and Garner were securities. Compare *Ward* v. *Colquitt*, 62 *Ga.* 267. The officer therefore did not know that Garner was speaking as a surety, and thus could not have understood that he was offering to return to official custody a person for whom he was bail. Moreover, assuming that the officer did in fact know of the bond and of Garner's relationship to it, this court could not say as a matter of law that the words spoken by Garner to and in the presence of the arresting officer were such as necessarily disclosed an intention on Garner's part to make a surrender of his principal, as was his legal right to do under the law. The language was susceptible of a different construction, as that Garner was merely assisting the officers in making an arrest and that as between him and Craig their business dealings were at an end, there being evidence to authorize the inference that a business relationship existed between them and that the deputy sheriff had knowledge of this fact.

In *Perkins* v. *Terrell*, 1 *Ga. App.* 250 (58 S. E. 133), it was said, that, "in order for a surrender of the principal in open court to be effective, the attention of the court must be called to the presence of the defendant principal, and the intention to surrender him must be definitely expressed and understood." Accordingly, it can not be held that the defense of a surrender was conclusively established by the evidence in this case. While in the *Perkins* case the surrender was made in open court, the principle enunciated in that case is here applicable, since the purpose to surrender was not "definitely expressed," and the officer therefore may not have understood that this was the intention of the security. See *Williams* v. *Jenkins*, 53 *Ga.* 166; *Andrews* v. *Hardwick*, 29 *Ga. App.* 251 (114 S. E. 644); *Davis* v. *Hardwick*, 33 *Ga. App.* 500 (126 S. E. 889).

■ The evidence showed further that soon after Craig was arrested and placed in jail, as stated above, he was delivered into the custody of Federal arresting officers for some purpose. The evidence is not clear as to why or upon what authority this was done; but it appeared that such transfer of the prisoner was not made in pursuance of any order of court, being the result of some informal arrangement between the State and Federal officers. For the purposes of this case, it is immaterial that the State officers may have acted improperly in this matter, since the State would not be bound by the act of such officers in releasing the prisoner without authority of law (Civil Code of 1910, § 303), and the case is the same as though the prisoner had escaped from the custody of the State officers. The attorney for the plaintiffs in error cites and relies upon *Cooper* v. *Brown*, 10 *Ga. App.* 730 (73 S. E. 1101), to sustain the contention that upon this state of facts the sureties were discharged. It was held in that case that where the principal in a criminal recognizance for one offense was convicted and placed upon the chain-gang for an entirely different offense, and then escaped, the sureties were thereby released from further liability upon the bond, and that this was true although it appeared that the principal escaped from the chaingang after he had entered upon the service of his sentence. The *Cooper* case was criticised in *Benson* v. *Harris*, 19 *Ga. App.* 328 (91 S. E. 491), and was impliedly disapproved in *Hubbard* v. *Walker*, 32 *Ga. App.* 490 (123 S. E. 917). It appears from the facts in the *Cooper* case that the second arrest

and the escape occurred after the bond had been breached and before the response of the security to the rule nisi; and, in addition to this, it may be that the rulings in that case are too broad; but without holding that the decision in that case is sound or that it is unsound, and without any ruling as to what effect the criticisms should have upon its force as a precedent, we think the case is distinguished from the one at bar, since in that case the State elected to proceed against the prisoner on the second charge to the point of convicting him and placing him upon the chain-gang pending the bond in the first case; whereas in the present case it appears that no trial was had on either charge, and the prisoner was presumably being held merely until he should give bond for the second offense.

In *West v. Colquitt*, 71 *Ga.* 559 (51 Am. R. 277), the Supreme Court said: "Where one has been arrested and given bond to answer for a criminal offense, the sureties on such recognizance are not discharged by the subsequent arrest of their principal on another charge, and the giving of a bond, with other sureties, to answer therefor. If the State should keep him in continued custody, so as to render his production easy for it, but impossible for the sureties, they would be relieved; but the mere temporary restraint prior to the giving of the second bond would not work a discharge." In the instant case, the trial judge was authorized to find as a matter of fact, if not even to hold as a matter of law, that the prisoner was subjected to a "mere temporary restraint" following his arrest upon a second and different charge, and that his escape during this period did not have the effect of releasing the securities upon the recognizance. In a case of this sort it may be important to ascertain whether there was a rearrest for the same offense or an arrest for a different offense. In the former case; if the arrest is by proper authority, the bail, as a general rule, is unconditionally discharged. *Smith v. Kitchens*, 51 *Ga.* 158 (21 Am. R. 232); *Benson v. Harris*, supra. In the latter case the question of the discharge will depend upon the circumstances, including the duration of the imprisonment. *West v. Colquitt*, supra; *Buffington v. Smith*, 58 *Ga.* 341; *Hubbard v. Walker*, supra. Seemingly, the principal's *escape* is immaterial in any case in determining the liability of the bail, unless, *in case of his arrest for a separate and distinct offense*, he escapes at a time when the liability is merely dormant and

the circumstances are such that it is revived by the principal's return to freedom. Thus, apparently a mere escape could never operate to release the bail, although in some cases it might perhaps preserve a liability that was otherwise about to expire. See, in this connection, 3 Am: & Eng. Enc. Law (2d ed.) 719; 6 C. J. 1026; McDonald *v.* Kentucky, 213 Ky. 570 (281 S. W. 538, 45 A. L. R. 1034, 1037, and cit.) We hold that under the facts of this case the court did not err in entering judgment absolute against the securities. If the decision in the *Cooper* case (10 *Ga. App.* 730, supra) is unsound, the same is true of the decision in *Munday* v. *State,* 24 *Ga. App.* 111 (100 S. E. 19), which was predicated mainly upon the *Cooper* case; but the *Munday* case is in the same way distinguished from the case at bar; and hence, in deciding the present case, it is unnecessary either to find fault with or to approve the rulings made in those cases. The judge of the superior court did not err in dismissing the certiorari.

*Judgment affirmed. Jenkins, P. J., and Stephens, J., concur.*